IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| JUDY WILSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 5:20-CV-118 (MTT) |
| | ) |
| WALMART STORES EAST, LP | ) |
| d/b/a WAL-MART, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Plaintiff Judy Wilson sued Walmart Stores East, LP, for injuries arising from a slip and fall on Walmart's premises. Doc. 1-2. Walmart now moves for summary judgment. Doc. 18. For the reasons addressed below, Walmart's motion (Doc. 18) is **GRANTED**, and Wilson's claims are **DISMISSED**.

**I. BACKGROUND**

On December 1, 2018, Wilson slipped and fell on an "invisible" foreign substance in the seasonal goods aisle of a Walmart store. Docs. 18-2 ¶¶ 1, 9; 26-1 ¶¶ 1, 9. The only person near Wilson was another customer, who came to her assistance after the fall. Docs. 18-2 ¶¶ 7-8; 26-1 ¶¶ 7-8. Nothing impaired Wilson's ability to see her surroundings at the time of the fall—the lighting was adequate, there were no distractions, and nothing blocked her view. Docs. 18-2 ¶¶ 10-13; 26-1 ¶¶ 10-13. But Wilson could not see the clear substance, later discovered to be oil, that she slipped on. Docs. 18-2 ¶ 9; 26-1 ¶ 9. There were no empty or broken bottles or any other indication

of a spill in the area.  Docs. 18-2 ¶ 19; 26-1 ¶ 19.  There is no evidence of how long the oil had been on the floor or that any Walmart employee had knowledge of the spill prior to Wilson's fall.  Docs. 18-2 ¶¶ 20, 28; 26-1 ¶¶ 20, 28.  In her deposition, Wilson testified multiple times that she could not see the oil—agreeing the oil was "clear," it was "invisible," it blended in with the "shiny tile floor," and "nobody could have seen it from a standing position."  Docs. 18-2 ¶ 9; 26-1 ¶ 9.  The customer who assisted Wilson also could not see the oil.  Docs. 18-2 ¶ 17, 26-1 ¶ 17.  In her deposition, Wilson stated that her husband was able to see the oil only *after* her fall.  Doc. 22 at 164:3-5.

## II. STANDARD

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim.'"  *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (emphasis in original) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)).  The moving party "simply may show … that there is an absence of evidence to support the nonmoving party's case." *Id.* at 1438 (internal quotation marks and citation omitted).  "Assuming the moving party has met its burden, the non-movant must then show a genuine dispute regarding any issue for which it will bear the burden of proof at trial."  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224-25 (11th Cir. 2002) (citing *Celotex Corp.*, 477 U.S. at 324).

In determining whether a genuine dispute of material fact exists, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). A material fact is any fact relevant or necessary to the outcome of the suit, and a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

### III. DISCUSSION

"Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." O.C.G.A. § 51-3-1. To prevail on a claim for negligence in a slip and fall case in Georgia, the plaintiff "must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier." *Robinson v. Kroger Co.*, 268 Ga. 735, 748, 493 S.E.2d 403, 414 (1997). There is no evidence of actual knowledge in this case, and so, Wilson must show that Walmart had constructive knowledge of the hazard.

Constructive knowledge may be demonstrated in two ways: (1) through proof that a store employee was in the immediate area and could have easily seen the hazard and removed it, or (2) by showing that the hazard had been present for such a time that it would have been found and removed if the store was conducting reasonable inspections of the premises. *Wallace v. Wal-Mart Stores*, 272 Ga. App. 343, 345, 612

S.E.2d 528, 530 (2005) (citation omitted).  There is no evidence that an employee was in the area at the time of the fall, so ordinarily, analysis would proceed to Walmart's inspection practices.  But the Court "need not reach that issue if no evidence exists that [the hazard] could have been discovered during a reasonable inspection."  *Keisha v. Dundon,* 344 Ga. App. 278, 281, 809 S.E.2d 835, 838 (2018) (citing *Chastain v. CF Ga. North Dekalb L.P.*, 256 Ga. App. 802, 803, 569 S.E.2d 914, 916 (2002)).  If the oil could not be seen during a reasonable inspection, "then no inference arises that [Walmart's] failure to discover the defect was the result of any alleged failure to inspect."  *Chastain*, 344 Ga. App. at 803.

Walmart argues that there is no evidence that the oil could have been discovered during a reasonable inspection because Wilson testified that the oil was "invisible" and that "nobody could have seen it."  Doc. 18-1 at 13-14.  Wilson contends that despite her own testimony, the visibility of the oil remains a question of fact.  Wilson cites *Straughter v. J.H. Harvey Co.*, a case in which the plaintiff slipped on a small green item on gray and green flooring.  232 Ga. App. 29, 30, 500 S.E.2d 353, 354 (1998).  In *Straughter*, plaintiff testified that "she did not know if she would have been able to see the item had she looked down on the floor," and the Georgia Court of Appeals found this created a question of fact.  *Id.*  However, Wilson did not say she was unsure if she could have seen the hazard had she been looking—she testified not only that she could not have seen the oil but that "nobody" could have seen it.  Docs. 18-2 ¶ 9; 26-1 ¶ 9.  Wilson also argues that the visibility of the oil is in question because a Walmart employee was able to see the oil to mop it up after Wilson fell.[1]  However, as Walmart notes, this is not

---

[1] Wilson contends that a statement made by her now-deceased husband, who was with her when she fell, also puts the visibility of the oil into question.  In her deposition, Wilson testified: "My husband said that

-4-

evidence that the oil was visible *before* Wilson fell, as the streaks from the fall and the mopping may have made the oil more visible.  Doc. 29 at 1.   Further, evidence of a hazard being slightly visible or visible only under certain circumstances is not sufficient to show that the hazard could have been discovered during a reasonable inspection.  *See Chastain*, 344 Ga. App. at 803 (holding summary judgment was proper when the water hazard at issue could only be seen by bending down and looking from a specific angle).

      Second, Wilson argues Walmart employees are "better situated, trained, and experienced with inspecting, locating, and remedying spills, hazards, and other conditions which may present a danger to customers."  Doc. 26 at 5.  In support of this argument, Wilson cites *Donastorg v. Rainbow USA, Inc.*, a case in which a plaintiff stepped on an anti-theft sensor pin which she testified she could not see.  342 Ga. App. 215, 216, 802 S.E.2d 425 (2017).  There, the plaintiff's testimony regarding her failure to see the pin did not "equat[e] to an admission that even an employee who was fully aware of the hazards associated with stray sensor pins would not have been able to see and identify the hazard during a reasonable inspection of the storeroom floor."  *Id.* at 221 (citation omitted).  However, *Donastorg* differs in terms of the plaintiff's testimony and the facts of the hazard.  In that case, the plaintiff testified only that she could not

---

when they were mopping—before they mopped the floor there, he said that he could see where I slipped." Doc. 22 at 164:3-5.  At oral argument, Wilson's counsel argued that her husband's statement fell under the present sense impression exception to hearsay.  *See* Fed. R Evid. 803(1).  However, the Eleventh Circuit has held that the present sense impression exception requires sufficient evidence that the statement was made contemporaneously to the event in question.  *See United States v. Cruz*, 765 F.2d 1020, 1024 (11th Cir. 1985).  Wilson does not establish that her husband made the statement contemporaneous to her fall.  Her rather confusing account of her husband's statement never says when the statement was made.  Accordingly, that statement is inadmissible under Federal Rule of Evidence 803(1).  Moreover, the statement itself does not overcome Wilson's own testimony.  Wilson's husband's possible ability to see the oil after Wilson slipped on it does not tend to establish that the oil was visible *before* she stepped on the oil and slipped.

have seen the pin if she had looked down, which the plaintiff attributed to the direction she was walking when she stepped on the pin.  *Id.*  In comparison, Wilson's testimony clearly states that the oil was invisible and "nobody" could have seen it.  Docs. 18-2 ¶ 9; 26-1 ¶ 9.  Additionally, the store in *Donastorg* was on notice of the anti-theft pins being left on the floor and their potential as a safety hazard.  *Id.* at 428.  In this case, nothing suggests that invisible oil spills were such a pervasive problem for Walmart that such constructive notice existed.  *Id; see also Food Lion, Inc., v. Walker*, 290 Ga. App. 574, 577, 660 S.E.2d 426, 429 (2008) (holding that the store "was on notice of the risk of the particular [invisible] hazard" that caused the plaintiff's fall because leaking chicken was a persistent problem for the store).

      Finally, Wilson points to a case in which the plaintiff slipped on clear chicken grease, and summary judgment was denied because of the grease's invisibility.  *Ingles Mkts., Inc. v. Seymour*, 356 Ga. App. 889, 849 S.E.2d 715 (2020).  However, in that case, the trial court granted summary judgment to the store on the grounds that the plaintiff had previously walked down the aisle where she later fell and should therefore be expected to have knowledge of the hazard.  *Id.* at 890.  The Court of Appeals reversed, finding the evidence "that the hazard was not easily discernable" created an issue of fact as to whether the plaintiff had knowledge of the spilled grease, regardless of her prior trip down the aisle.  *Id.*  This analysis does not apply here, where there is no argument that Wilson had prior knowledge of the oil.

      In short, there is no evidence that Walmart had actual knowledge of the hazard or that a reasonable inspection would have discovered the hazard.

### III. CONCLUSION

For the reasons discussed above, Walmart's motion (Doc. 18) is **GRANTED**. Accordingly, Wilson's claims are **DISMISSED**.

**SO ORDERED**, this 16th day of February, 2022.

S/ Marc T. Treadwell<br>
MARC T. TREADWELL, CHIEF JUDGE<br>
UNITED STATES DISTRICT COURT